GRIMES, Acting Chief Judge.
This appeal highlights problems which are often encountered when confessions are introduced into evidence in a joint criminal trial.
Appellants Adams and Passarella were charged with the first degree murder of James Wylie. The appellants unsuccessful *1133 ly sought to sever their trials on the premise that the state intended to introduce confessions of each of them which implicated the other in violation of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). At their trial both the confessions were admitted into evidence over objection but the jury was admonished to disregard each defendant’s confession as it tended to implicate the other. The jury found Adams guilty of first degree murder and Passarella guilty of second degree murder. The court sentenced Adams to life imprisonment and imposed a sixty year prison term upon Passarella.
Adams had confessed to the police in writing. He recited that on the night of November 11, 1981, he and Passarella had been drinking in the Crown Lounge where they made the acquaintance of James Wylie. Passarella told Adams that they ought to steal Wylie’s money. Sometime after midnight, the three of them drove to Mal-vern Court, an uninhabited construction site, and continued to drink. Passarella said that he wanted Wylie’s money and Wylie began to put up a fight. Passarella picked up a club which he swung at Wylie. This forced Wylie into Adams and Adams stabbed him. Wylie tried to get away but Passarella chased him and clubbed him as he ran. Adams caught up with the two of them and stabbed Wylie several times before he fell. Adams cut the wallet from Wylie’s belt and Passarella put it in his pocket. Passarella hit Wylie a couple more times. Passarella then said that Wylie was still alive and they would have to kill him. Adams stabbed him in the throat and in the chest.
Passarella gave an oral confession to the police. He confirmed that he and Adams met Wylie for the first time at the Crown Lounge on the night of November 11, 1981. When Passarella and Adams left the bar, Wylie insisted upon coming along although he was uninvited. They drove to Malvern Court where they sat on the tailgate of the truck drinking and talking. Suddenly, Adams pulled out a knife and said to Passarel-la, “I ought to stick him.” Passarella said he first thought that Adams was kidding and responded, “Go for it.” Adams then started stabbing Wylie. Passarella picked up a stick because he was scared. He hit Wylie with the stick after Adams told him to do so. Passarella ran after Wylie and hit him again. Adams again stabbed Wylie. Passarella said, “He is still breathing, we can’t leave him like this, he'll tell.” Adams then stabbed Wylie three more times. They searched the body in order to remove Wylie’s identification and took the money as an afterthought. Adams cut the wallet from Wylie’s body and gave it to Passarella.
Apparently the court denied the motion for severance on the ground that the two confessions were interlocking and therefore admissible under the rationale of Parker v. Randolph, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979). However, during the trial the court only permitted the introduction of Adams’ written confession after deleting the reference to Passarella’s suggestion at the outset that they ought to rob Wylie. Whether to grant a severance lies within the discretion of the trial court. Crum v. State, 398 So.2d 810 (Fla.1981). We cannot say that the court abused its discretion in denying the motions for severance although Adams’ statements should have been edited at the severance hearing. See Mathews v. State, 353 So.2d 1274 (Fla. 2d DCA 1978). The court’s delay in editing may have precipitated the controversy over the prosecutor’s opening statement hereafter discussed but the delay did not constitute reversible error.
In Bruton v. United States, the court had admitted the confession of defendant, Evans, which implicated his co-defendant, Bruton. The United States Supreme Court held this to be a violation of Bruton’s sixth amendment right of confrontation which could not be avoided by a jury instruction to disregard the confession as to Bruton. In Parker v. Randolph, each of the code-fendants made confessions implicating the other. Four of the justices held that the admission of the interlocking confessions with proper limiting instructions did not *1134 infringe upon the defendants’ rights of confrontation because their respective confessions supplied the most persuasive evidence against them. In a concurring opinion, Justice Blackmun reasoned that a Bruton error had occurred but concluded that the error was harmless. The distinction between the two theories has been described as a “legal nicety.” United States v. Roux Laboratories, Inc., 437 F.2d 209 (9th Cir.1971).
In the case before us, Passarella complains that the confessions were not interlocking and that the court was not entitled to edit Adams’ statement to try to make them interlock. He further contends that even after the editing, the two confessions did not interlock because each defendant tended to place more culpability upon the other. We cannot see how Passarella can complain that the court deleted from Adams’ statement all references to Passar-ella having preplanned the robbery. After all, the deletion of incriminating references from a codefendant’s confession is one of the alternatives to severance contemplated by Florida Rule of Criminal Procedure 3.152(b)(2). After the deletion the confessions were substantially interlocking. The fact that a codefendant’s confession is predictably exculpatory concerning some details does not render its admission harmful when the defendant’s own confession shows him to be guilty of the crime with which he is charged. United States ex rel. Ortiz v. Fritz, 476 F.2d 37 (2d Cir.), cert. denied, 414 U.S. 1075, 94 S.Ct. 591, 38 L.Ed.2d 482 (1973); Damon v. State, 397 So.2d 1224 (Fla. 3d DCA 1981).
Passarella also argues that the court erred in permitting the prosecutor to refer in his opening statement to the portion of Adams’ confession which stated that Passarella suggested that they rob Wylie before they left the Crown Lounge. Apparently Passarella’s objection to these comments was denied because it was not until later that the court decided to edit Adams’ confession. The prosecutor compounded the problem in closing argument by improperly referring to Adams’ confession, as introduced, in support of his contentions against Passarella. Because of these errors we would be inclined to reverse Passarella’s conviction were it not for the overwhelming evidence against him.
By his own confession, Passarella could have been convicted of first degree murder as an aider and abetter. § 777.011, Fla. Stat. (1981). He already received something of a jury pardon by being convicted of only second degree murder. He cannot reasonably argue that his confession indicates culpability of a lesser degree of homicide. In addition, he told a girl named Terry Pelczynski how he and Adams had killed Wylie. If this were not enough, he and Adams also took James Clark back to the scene of the crime where they showed him Wylie’s body and explained how they had killed him. The evidence against Pas-sarella was so great that the Bruton violations committed by the prosecutor constituted no more than harmless error. See Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).
Adams makes what could be characterized as a “reverse Bruton ” argument. He says that he was unfairly prejudiced when the court deleted from his confession the statement that Passarella had planned the robbery. Certainly, a defendant is entitled to bring out any exculpatory portions of a confession which has been introduced against him. Mathews v. State, 353 So.2d 1274 (Fla. 2d DCA 1978). Here, however, the deleted statement only had the effect of further implicating Passarella. The deletion did not tend to show that Adams was any less guilty of first degree murder.
In any event, aside from having accompanied Passarella when they took James Clark to see the body, Adams also told Terry Pelczynski how he and Passarella had killed Wylie. Not content with these admissions, Adams also bragged to three others about the killing. If there was any trial error with respect to Adams, it too was indisputably harmless.
AFFIRMED.
SCHEB and RYDER, JJ., concur.